USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7 | 11 | 08

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 8, 2008

**REDACTED VERSION FOR FILING**

**BY HAND**
Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street, Room 650
New York, New York 10007



**MEMO ENDORSED**
**P. 8**

> Re:   **United States v. Judith Leekin,**
>            **08 Cr. 446 (RMB)**

Dear Judge Berman:

The Government respectfully submits this letter in advance of sentencing in the above-referenced case, which is presently scheduled for July 15, 2008, at 2:00 p.m.  For the reasons set forth below, the Government submits that a sentence within the applicable Guidelines range of 78 to 97 months' imprisonment would be fair and reasonable based on the factors set forth in 18 U.S.C. § 3553(a).  Accordingly, the Government respectfully requests that the Court sentence the defendant within the applicable Guidelines range.

**I.      Factual Background and Procedural History**

There are children in the foster care systems of New York State and New York City whose age, background, or physical or mental disability makes it harder to find an adoptive placement.  In order to increase the likelihood of these children finding permanent homes, New York State has enacted legislation which allows payments to be made for the care and maintenance of these children when they are adopted.

An adoption subsidy is a monthly payment mandated by law to be made for the care, maintenance, and/or medical needs of a child who fits the definition of handicapped or hard-to-place as defined by New York State law and regulations.  Subsidy payments are available to all eligible children until the age of 21 regardless of the adoptive parent's income.  These payments are discontinued only when it is determined by a social services official that the adoptive parent is no longer legally responsible for the support of the child or that the child is no longer receiving any support from the parent.

Honorable Richard M. Berman
July 8, 2008
Page 2

The New York City Administration for Children's Services (the "NYC ACS") requests, on an annual basis, adoptive parents who are receiving adoption subsidies from NYC ACS to submit an annual certification form (the "Certification Form"). The purpose of the Certification Form is to determine whether adoptive parents continue to be legally responsible for the support of their adopted children and whether the adoptive parents are still providing support. Adoptive parents sign the Certification Form, and submit a copy of either the adopted child's school report card, school attendance record, medical immunization card, or a drivers license/non-drivers identification card. In addition, New York State law requires that adoptive parents notify the State in the event that they either cease to be legally responsible for the child or are no longer providing support, or if the child has died.

Beginning in or about 1988, Leekin adopted eleven children (collectively, the "Adopted Children") in New York, New York. Many of these children were physically and/or mentally disabled. Leekin misrepresented her identity to the New York State Office of Children & Family Services ("NYS OCFS") and the NYC ACS in order to adopt the Adopted Children. Leekin adopted one child (SW)[1] in 1988, under the name "Anne Marie Williams." Leekin adopted five children under the name "Michelle Wells." Leekin adopted four of the five children (SW2, TW, JW, TW2) in 1994; and she adopted the fifth (RW) in 1995. In 1993, Leekin adopted three children (LG, JG, and SG) under the name "Cheryl Graham." Finally, in 1996, Leekin adopted two children (JG2 and TG) under the name "Eastlyn Giraud."[2] Had either the NYS OCFS or the NYC ACS known that Leekin was using false names to apply to adopt the children, those agencies would not have approved Leekin's adoptions of the Adopted Children.

In addition, Leekin misrepresented her living situation to the NYS OCFS and the NYC ACS in order to adopt the Adopted Children. Specifically, Leekin misrepresented how many other children were in her care, and the extent of the physical and mental disabilities of those children. For example, in or about October 1995, Leekin, using the name "Eastlyn Giraud," met with an agent of ACS (the "ACS Agent"), in order to convince ACS to permit Leekin to adopt JG2 and TG. During this interview, Leekin misrepresented her identity to the ACS Agent and

---

[1] Some of the adopted children are minors and some others are adults who are incompetent. Accordingly, their attorneys have requested that the Government make every effort to ensure the privacy to which his clients are entitled, both under federal law, see Fed. R. Crim. Pro. 49.1, and New York law pertaining to the privacy of adopted persons, see Section 114 of N.Y. Domestic Relations Law. Accordingly, I have submitted the names of the adopted children to the Court under separate cover, and have listed them herein by their initials.

[2] In addition, Leekin provided care for a twelfth adopted child, TJ. Based on the information currently available to the Government, TJ was treated well by the defendant and permitted to attend school and live a normal life. Accordingly, the Government presently does not view TJ as a "crime victim" for purposes of this case.

Honorable Richard M. Berman
July 8, 2008
Page 3

also misrepresented what children were living in her home and receiving care from her. Namely, Leekin stated that only JG2, TG, and TJ were living with her. Although all of the Adopted Children were living with her at the time, Leekin did not mention their existence or the disabilities from which they suffered. Had either the NYS OCFS or the NYC ACS known that Leekin already was the sole care-giver for a large number of children with physical and mental disabilities, that fact would have been materially significant to those agencies' decisions to approve Leekin's adoption of additional children.

In or about 1997, Leekin lived with the Adopted Children in Queens, New York. During this time, the Adopted Children lived in the basement of Leekin's home and did not go to school or outside. In addition, several of the Adopted Children were restrained in order to prevent them from getting out of their beds.

In or about 1998, Leekin moved with the Adopted Children from New York to Port St. Lucie, Florida. While in Florida, Leekin caused the Adopted Children to live in a similar manner to which they had lived in New York. For example, in or about 2004, the Adopted Children began living in a home in Port St. Lucie, Florida. Between in or about 2004, through in or about July 2007, the Adopted Children slept on the floor of a storage room abutting the garage. The Adopted Children typically only entered the house to use the bathroom or the kitchen. Several of the Adopted Children were restrained using plastic ties. In addition, the Adopted Children did not attend school. Neither the NYS OCFS nor the NYC ACS knew about the manner in which Leekin treated the Adopted Children. Had Leekin disclosed this information to the NYS OCFS or the NYC ACS, the agencies, among other things, would have suspended all adoption subsidy payments to Leekin.

Leekin submitted false Certification Forms in order to collect the adoption subsidies for the Adopted Children. For example, in 2002, Leekin (using the aliases "Eastlyn Giraud" and "Michelle Wells") submitted to the NYC ACS copies of school report cards for seven of the Adopted Children. Based on these submissions, Leekin received adoption subsidies on behalf of those adopted children. In fact, however, the report cards that Leekin submitted were fraudulent and the Adopted Children had never attended the schools reflected on the report cards.

In addition, Leekin submitted multiple false Certification Forms for the eleventh adopted Child, SG. SG was severely mentally and physically handicapped. The extent of SG's handicaps were so severe that he could neither speak nor walk. In or about 2000, Leekin removed SG from her home. Between approximately 2000 through July 2007, SG did not live with Leekin, and Leekin stopped providing care for SG altogether. Neither the Government nor law enforcement officials in Port St. Lucie have been able to determine what became of SG. In interviews, some of the Adopted Children reported that when Leekin removed SG from her home, Leekin told them that she had taken him to the hospital and that he had died. Law enforcement has been unable to locate any hospital to which SG may have been admitted or to uncover any other clues

Honorable Richard M. Berman
July 8, 2008
Page 4

about whether he is still alive. Leekin continued to submit Certification Forms for SG after 2000. In these Certification Forms, Leekin falsely stated that SG continued to live in Leekin's home. Leekin continued to collect adoption subsidies for SG until on or about July 18, 2007, when her scheme was discovered. After in or about 2000, neither the NYS OCFS nor the NYC ACS knew that SG was no longer living with Leekin. Had Leekin disclosed this information to the NYS OCFS or the NYC ACS, the agencies would have suspended all subsidy payments to Leekin in connection with SG.

Between approximately 1988 and on or about July 18, 2007, the NYS OCFS and the NYC ACS paid Leekin received approximately $1.68 million in adoption subsidies. The adoption subsidies were paid on behalf of the Adopted Children to Leekin under the following aliases: "Michelle Wells," "Eastlyn Giraud," "Cheryl Graham," and "Anne Marie Williams." More specifically:

a.  Between approximately 1994 and on or about July 18, 2007, the NYS OCFS and the NYC ACS paid a total of at least approximately $866,653.00 in adoption subsides for five adopted children to Leekin under the alias "Michelle Wells."

b.  Between approximately 1993 and on or about July 18, 2007, the NYS OCFS and the NYC ACS paid a total of at least approximately $459,464.47 in adoption subsides for three adopted children to Leekin under the alias "Cheryl Graham."

c.  Between approximately 1996 and on or about July 18, 2007, the NYS OCFS and the NYC ACS paid a total of at least approximately $254,727.79 in adoption subsides for two adopted children to Leekin under the alias "Eastlyn J. Giraud."

d.  Between approximately 1988 and on or about July 18, 2007, the NYS OCFS and the NYC ACS paid a total of at least approximately $107,234.61 in adoption subsides for one adopted child to Leekin under the alias "Anne Marie Williams."

On May 20, 2008, Leekin pled guilty, pursuant to a plea agreement, to Counts One and Two of the Information. Count One charges the defendant with mail fraud, in violation of Title 18, United States Code, Section 1341. Count Two charges the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

## II.    **Applicable Law**

Following the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), the Sentencing Guidelines and the calculations derived thereunder are no longer binding on this Court. However, the Second Circuit recently has made clear that the Booker decision does not return sentencing law "to the sentencing regime that existed before 1987." United

Honorable Richard M. Berman
July 8, 2008
Page 5

States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005). Rather, the Circuit has directed that the Guidelines play a central role in post-Booker sentencing procedure. Specifically, the Circuit directed District Courts to begin the sentencing process by determining and considering the applicable Sentencing Guidelines range. Crosby, 397 F.3d at 111. The sentencing court should then consider "policy statements issued by the Sentencing Commission, including departure authority." Id. at 112. Finally, the sentencing court should sentence the defendant in accordance with the factors set forth in Title 18, United States Code, Section 3553(a). Id. at 111-13. The Circuit made clear that the facts on which a sentence is based may be found by the District Court, in the traditional manner. Id. at 112-13.

Section 3553(a) requires the sentencing court to "impose a sentence sufficient, but not greater than necessary," to accomplish the following purposes:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(2). Section 3553(a) further requires the sentencing court to consider, inter alia, "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," and "the need to provide restitution to any victims of the offense," as well as the Guidelines sentencing range, including any pertinent policy statements. 18 U.S.C. § 3553(a)(1)-(7).

## III.    The Appropriate Sentence In This Case

### A.    The Guidelines Sentencing Range

The parties have stipulated in the plea agreement that the defendant's Stipulated Guidelines Range is 78 to 97 months' imprisonment.[3] The parties further agreed that neither

---

[3] In addition, the defendant agreed to admit the forfeiture allegation in the Indictment, and agreed to forfeit $1.68 million to the United States, representing the criminal proceeds resulting from her participation in the crimes charged in the Information.

Honorable Richard M. Berman
July 8, 2008
Page 6

party will seek a sentence outside of the Stipulated Guidelines Range. The Government submits that a sentence within the applicable Guidelines range of 78 to 97 months' imprisonment would be fair and reasonable based on the factors set forth in 18 U.S.C. § 3553(a).

As an initial matter, a sentence of incarceration within the Stipulated Guidelines Range is necessary and reasonable because the defendant committed an extremely serious crime. In order to perpetuate this scheme, the defendant took advantage of some of the most vulnerable members of society. The pawns in her fraud were children and, in many cases, people who suffered from significant physical and mental disabilities. These victims could not speak for themselves and were easily manipulated and mistreated by the defendant.

Even worse, the defendant's treatment of the Adopted Children is best described as brutal. For several years, the defendant prevented the Adopted Children from attending school or generally making any attempt to live a normal life. There were periods of time in which the Adopted Children slept on the floor of a storage room abutting the garage, and were not permitted to enter the majority of the house or to go outside. The defendant commonly used plastic ties and handcuffs to restrain several of the Adopted Children. In addition, several of the Adopted Children have reported to the Government that the defendant often resorted to physical violence in order to punish them.

In addition, the defendant's scheme targeted a social service system that is designed with the best of intentions. The purpose of the adoption subsidies program is to encourage the adoption of children whose age, background, or physical or mental disability makes it difficult to find an adoptive placement. The defendant's fraud corrupted this system by turning it from a support network for adoptive parents and their children into a crude money-making venture.

At Offense Level 28 (which includes a 3-point reduction for acceptance of responsibility), and Criminal History Category I, the defendant's Guidelines sentencing range is 78 to 97 months' imprisonment. A sentence within this range would be fair and reasonable based on the factors set forth in 18 U.S.C. § 3553(a).

## IV.    Restitution

The Government seeks restitution in the amount of $1.68 million. In its letter of July 1, 2008, the NYS OCFS has indicated that, although it was a victim of the defendant's fraud, OCFS wishes that any restitution payments go directly to the eleven children whom Leekin adopted. It is the Government's understanding that NYC ACS shares this view. Accordingly, the Government requests that the restitution should be paid by Leekin to the eleven children whom she adopted as part of her scheme to defraud.

Leekin collected benefits on behalf of the Adopted Children in the following amounts:

Honorable Richard M. Berman
July 8, 2008
Page 7

| | | |
|---|---|---|
| 1. | SW | $107,234 |
| 2. | TW | $145,190 |
| 3. | JW | $217,158 |
| 4. | TW2 | $143,576 |
| 5. | RW | $215,536 |
| 6. | SW2 | $145,190 |
| 7. | LG | $154,977 |
| 8. | JG | $152,817 |
| 9. | SG | $151,669 |
| 10. | JG2 | $120,547 |
| 11. | TG | $134,180 |
| | **TOTAL** | **$1,688,074** |

    As the Government indicated in its letter of May 28, 2008, nine of the Adopted Children are represented by John Walsh, Esq. Mr. Walsh's contact information is: 3067 E. Commercial Blvd., Ft. Lauderdale, FL 33308, W: (561) 822-9717. Mr Walsh represents: SW, TW, JW, TW2, RW, LG, JG, JG2 and TG. Renee Marquis, Esq. has been appointed to serve as SW2' guardian. Ms. Marquis' contact information is Renee Marquis, Esq., P.O. Box 1270, Fort Pierce, Florida, 34954, W: (772) 464-8200. Restitution payments may be paid to Mr. Walsh and Ms. Marquis for distribution to their clients.

Honorable Richard M. Berman
July 8, 2008
Page 8

## Conclusion

For the reasons stated, the defendant should be sentenced to a term of between 78 to 97 months' imprisonment. Due to the sensitive nature of the information enclosed, the Government respectfully requests that this letter be filed and maintained under seal.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:    _Alexander J. Willscher_

Alexander J. Willscher
Assistant United States Attorney
P: (212) 637-2736
F: (212) 637-2452

cc:    Diamond Litty, Esq./Mark V. Harllee, Esq. (by fax)
       John Walsh, Esq. (by fax)
       Renee Marquis, Esq. (by fax)
       Joseph Cardieri, Esq. (by fax)
       John F. Stupp, Esq. (by fax)

The Court will consider this submission in connection with sentencing on 7/15/08.

SO ORDERED:
Date: 7/11/08

Richard M. Berman, U.S.D.J.